**Leonard O. PARKER, Jr.**

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION.**

Civ. A. No. 94–2503.

United States District Court, E.D. Louisiana.

March 8, 1995.

Leonard O. Parker, Jr., New Orleans, LA, pro se.

James C. Arceneaux, III, Graham & Arceneaux, New Orleans, LA, for Federal Home Loan Mortg. Corp.

S.J. Beaulieu, Jr., New Orleans, LA, pro se.

## MEMORANDUM AND ORDER

VANCE, District Judge.

This matter is before the Court on debtor Leonard O. Parker's appeal from the bankruptcy court's order denying confirmation of debtor's proposed Chapter 13 plan. Debtor's appeal was set for hearing on January 18, 1995, but was submitted on the briefs. For the reasons stated herein, the order of the Bankruptcy Court is AFFIRMED.

## I. FACTUAL BACKGROUND

Debtor owns real property located at 97 Morrison Court, New Orleans, Louisiana. Debtor resides in the single-family home. He also uses the home as office space for his legal practice. According to the debtor, approximately forty-six percent of the home is utilized for business purposes.

To finance the purchase of the property, debtor obtained a loan from Federal Home Loan Mortgage Corporation ("Federal Home"). The loan was personal to the debtor and his wife. At the time of the purchase, the residence was not intended to be used for office space. The change in the use of the property occurred on October 31, 1991, when the debtor and his wife separated.

Debtor's first bankruptcy petition was filed on November 14, 1991 under Chapter 7. In the Chapter 7 proceeding, Parker claimed that his house was a homestead under state law and subject to exemption. Parker's debts were discharged on April 16, 1992. The parties, however, offer conflicting accounts of whether debtor's personal liability for the mortgage was discharged in the Chapter 7 proceeding.[1]

Debtor subsequently filed a second petition on July 20, 1993 under Chapter 13 of the Bankruptcy Code. Parker again listed the Morrison Court property as his homestead. Because debtor failed to file a feasible plan, the Bankruptcy Court dismissed the petition on December 7, 1993.

On April 7, 1994, debtor filed the Chapter 13 petition currently before the Court. Federal Home filed a proof of claim on May 19, 1994. The proof of claim states that Federal Home has a total secured claim of $90,584.64, representing the amount of the first mortgage on the Morrison Court property, including arrearage, plus foreclosure costs, property tax advances, late charges, and attorney's fees. Debtor's confirmation plan proposes to modify Federal Home's claim by reducing the total secured claim to the fair market value of the property (approximately $70,000), decreasing his interest rate, reducing

---

1. According to Federal Home, debtor reaffirmed his debt in a reaffirmation agreement that was filed in the Chapter 7 proceeding on April 1, 1992. Debtor claims that the reaffirmation agreement was ineffective because Federal Home failed to seek the Bankruptcy Court's approval of the reaffirmation agreement.

the monthly payment schedule, releasing debtor's wife from liability, and transferring the wife's interest in the home to the debtor.

Federal Home objected to confirmation of the plan, contending that the plan impermissibly modifies its secured claim in violation of 11 U.S.C. § 1322(b)(2). The Bankruptcy Court sustained Federal Home's objection and denied confirmation on July 5, 1994. In support of its decision, the bankruptcy court ruled that debtor's property had no inherent income producing power and that it was the debtor's principal residence. The Bankruptcy Court held that under these circumstances, 11 U.S.C. § 1322(b)(2) prohibited modification of Federal Home's claim. The Bankruptcy Court further held that debtor's Chapter 7 discharge did not alter Federal Home's preferred status under § 1322(b)(2).

On appeal, debtor argues that the Bankruptcy Court erred in denying confirmation of his proposed Chapter 13 plan. Debtor submits that the proposed modifications to Federal Home's claim do not present an obstacle to confirmation because the mortgage does not fall within the scope of 11 U.S.C. § 1322(b)(2). Debtor further contends that he is allowed to modify Federal Home's claim because his personal liability was discharged in the Chapter 7 proceeding. Finally, Parker contends that he can transfer his wife's interest in 97 Morrison Court pursuant to 11 U.S.C. § 1322(b)(9).

## II. DISCUSSION

■ The Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard. The Bankruptcy Court's conclusions of law are reviewed *de novo*. *In re Perez*, 954 F.2d 1026, 1027 (5th Cir.1992).

■ Under 11 U.S.C. § 1322(b)(2), a Chapter 13 flexible payment plan may not modify the rights of holders of claims secured only by "the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Applying this provision, the Supreme Court held in *Nobelman v. American Savings Bank*, — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), that the protection of Section 1322(b)(2) prevents the use of 11 U.S.C. § 506(a) to "strip down" the lien of a mort-

gage to the value of the mortgaged real estate when the creditor's claim is secured only by a lien on the debtor's principal residence. *Id.* at ——, 113 S.Ct. at 2111; *see also In re Hernandez*, 162 B.R. 160, 163 (N.D.Ill.1993). Debtor contends the Federal Home's mortgage does not fall within the scope of Section 1322(b)(2) because 97 Morrison Court is not his "principal residence," but rather serves the dual purpose of residence and office space. In denying confirmation of debtor's proposed plan, the Bankruptcy Court found that the Morrison Court property did not have an inherent income producing potential and that it was therefore debtor's "principal residence."

To determine whether Section 1322(b)(2) prohibits modification of a secured claim when the property at issue is used for both residential and commercial purposes, courts have typically considered whether there was significant commercial use of the property or whether the property has inherent income producing potential. *See In re McVay*, 150 B.R. 254, 256 (D.Or.1993). Thus, "courts have allowed a debtor to modify the claims of a secured creditor where the security interest attached to a farm that was actually being farmed for income producing purposes by the debtor, or where the debtor derived substantial rental income from the property." *Id.* at 257. Consideration has also been given to whether the lender knew of the mixed use of the property at the time the loan was made. *Id.* at 257.

It is undisputed that at the time they purchased the Morrison Court property, the Parkers intended to use it only for residential purposes and that loan granted to the Parkers by Federal Home was a personal, as opposed to a commercial, loan. It is also undisputed that debtor has claimed his property as a homestead in each of the three petitions filed in the Bankruptcy Court. Debtor's property is a single-family home located in a residential neighborhood. By debtor's own admission, the majority of the space in the structure is used for residential purposes. To hold that the property at issue has an inherent income producing potential would place home lenders in a precarious position by making Section 1322(b)(2) inappli-

cable whenever an individual maintained an office in his home. This was not the intent of Congress. *Id.* at 256. Thus, although debtor uses the property for business and personal purposes, the Bankruptcy Court correctly determined that 97 Morrison Court is the debtor's principal residence and that Federal Home's mortgage falls within the scope of 11 U.S.C. § 1322(b)(2).

Debtor contends that even if the Morrison Court property falls within the scope of Section 1322(b)(2), he is still entitled to reduce Federal Home's claim because his personal liability was discharged under Chapter 7, leaving only his *in rem* obligation.[2] Debtor's argument has been rejected by at least two courts since the Supreme Court issued its opinion in *Nobelman*. *Gelletich v. Household Realty Co.,* 167 B.R. 370 (E.D.Pa.1994); *In re Dydo,* 163 B.R. 663 (Bankr.1994). In *Dydo,* the court explained:

> The debtor's argument that *Nobelman* only applies to mortgage debts where personal liability on the entire debt obtains is not supported by any of the language in the *Nobelman* opinion. A careful review discloses no mention by the Court of distinctions based upon whether the debtors are personally liable on the mortgage debt. The Court plainly ruled that "the rights the bank enjoy[ed] as a mortgagee are [not] limited by the valuation of the secured claim.... The bank's contractual rights are contained in a unitary note that applies at once to the bank's overall claim, including both the secured and unsecured components."

*In re Dydo,* 163 B.R. at 664. This analysis of *Nobelman* is persuasive. There is simply no support for the debtor's argument that the discharge of his personal liability, if it in fact occurred, allows him to reduce the mortgagee's claim to the fair market value of the property.

In sum, the Court finds that the Bankruptcy Court properly held that the property located at 97 Morrison Court is debtor's principal residence and that the preferred status granted Federal Home under 11 U.S.C.

§ 1322(b)(2) was not affected by the alleged discharge of debtor's personal liability under Chapter 7. Because the debtor's proposed modification of Federal Home's claim was a sufficient basis upon which to deny confirmation, the Court does not reach the issue of whether debtor's plan could properly transfer title. Accordingly, the order of the Bankruptcy Court is AFFIRMED.

---

**2.** In ruling upon this issue, the Bankruptcy Court did not address the validity of the reaffirmation agreement signed by the debtor. The Court therefore assumes for purposes of its analysis that debtor's personal liability was, in fact, discharged.